# 12-240

## In the
## United States Court of Appeals
### For the Second Circuit

---

**UNITED STATES OF AMERICA,**

v.

**STAVROS M. GANIAS,**

*Defendant-Appellant.*

---

**On Appeal from the United States District Court
for the District of Connecticut**

---

**DEFENDANT-APPELLANT STAVROS GANIAS'S
RESPONSE TO PETITION FOR PANEL REHEARING**

---

**Stanley A. Twardy, Jr.**
**Day Pitney LLP**
**One Canterbury Green**
**201 Broad Street**
**Stamford, CT 06901**
**(203) 977-7300**

**Daniel E. Wenner**
**John W. Cerreta**
**Day Pitney LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**(860) 275-0100**

# TABLE OF CONTENTS

**<u>Page</u>**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................2

ARGUMENT.................................................................................................6

A.    The standards governing panel rehearing are narrow and require a showing that the Court has "overlooked or misapprehended" particular "point[s] of law or fact." ....................................................6

B.    The government cannot satisfy the standards for panel rehearing.......7

    1.    This Court did not overlook or forget about the good-faith exception to the exclusionary rule ...................................7

    2.    The government's blanket seizure plainly was not in compliance with precedent.....................................................10

    3.    The Court's assessment of the facts was proper and should not be disturbed ..........................................................12

    4.    There is no need to "reweigh" the costs and benefits of suppression ..........................................................................14

CONCLUSION ...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Branen*,
27 F.3d 29 (2d Cir. 1994).............................................................6, 7, 9, 10, 12

*Anderson v. Knox*,
300 F.2d 296 (9th Cir. 1962)..................................................................6

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
2004 U.S. App. LEXIS 19361 (6th Cir. 2004) ...........................................7, 10

*Caban-Hernandez v. Philip Morris USA, Inc.*,
486 F.3d 1 (1st Cir. 2007) ....................................................................14

*Davis v. United States*,
131 S. Ct. 2419 (2011)......................................................................8, 15

*Easley v. Reuss*,
532 F.3d 592 (7th Cir 2008)..................................................................6

*Gray v. Lucas*,
685 F.2d 139 (5th Cir. 1982)................................................................7, 14

*Herring v. United States*,
55 U.S. 135 (2009)..............................................................................8

*Marron v. United States*,
275 U.S. 192 (1927).............................................................................11

*Nix v. Whiteside*,
467 U.S. 431 (1984)............................................................................15

*Stanford v. Texas*,
    379 U.S. 476 (1965)...........................................................................1, 11, 12

*United States v. Ganias*,
    755 F.3d 125 (2d Cir. 2014)....................................................*passim*

*United States v. Leon*,
    468 U.S. 897 (1984)..............................................................................4, 8, 9

*United States v. Ortiz*,
    621 F.3d 82 (2d Cir. 2010)..........................................................................10

*United States v. Riley*,
    906 F.2d 841 (2d Cir. 1990)........................................................................12

*United States v. Santarelli*,
    778 F.2d 609 (11th Cir. 1985)....................................................................11

*United States v. Tamura*,
    694 F.2d 591 (9th Cir. 1982)......................................................................11

*United States v. Triumph Capital Group, Inc.*,
    211 F.R.D. 31 (D. Conn. 2002)............................................................11, 12

**Other Authorities**

Fed. R. App. P. 40.....................................................................................2, 6, 7

## PRELIMINARY STATEMENT

From 1791 until today, the Fourth Amendment has barred federal agents from completing "a seizure of one thing under a warrant describing another." *Stanford v. Texas*, 379 U.S. 476, 485-86 (1965), quoting *Marron v. United States*, 275 U.S. 192, 196 (1927). In this case, there is no dispute that the government seized and retained one thing (defendant Stavros Ganias's personal financial records) under a warrant that described another thing entirely (the files of two of Ganias's accounting clients, IPM and American Boiler). *See* SA27. The government has now given up defending the constitutionality of this extra-warrant seizure and indefinite retention. *See* Petition at 1-2. But the government nonetheless seeks rehearing of the Court's suppression holding, *see id.* at 5-15, on the ground that the agents acted reasonably when they disregarded the scope of their warrant, seized every file from Ganias's computers, and then retained those files for "two-and-a-half years"—without warrant or probable cause—"on the off-chance" that the files might someday "become relevant to a . . . criminal investigation." *United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014).

The conduct that the government defends as "objectively reasonable," *see* Petition at 7, was no such thing. It was egregious and patently unlawful—today, the day it occurred, and every other day over the last 250 years of Anglo-American

-1-

legal history.  *See* 755 F.3d at 134, 140-41, citing *Entick v. Carrington*, 95 Eng.

Rep. 807, 817-18 (C.P. 1765).  This Court's prior decision rejecting the

government's arguments against suppression did not "overlook[] or

misapprehend[]" any "point of law or fact." *See* Fed. R. App. P. 40(a)(2).  The

Court should summarily reject those arguments once more, and it should deny the

petition for panel rehearing.

## BACKGROUND

In November of 2003, officials from the U.S. Army's Criminal Investigative

Division (CID) came to Mr. Ganias's business premises and executed a warrant for

"data . . . relating" to the "operations" of two of Ganias's accounting clients—

American Boiler and IPM.  SA27.  At the time, Army CID was conducting a

procurement-fraud investigation into those two companies.  Nothing in the agents'

warrant application implicated Mr. Ganias in the alleged fraud.  And "[t]he

[g]overnment had no warrant authorizing the seizure" of any records relating to

Mr. Ganias's personal affairs or finances.  *See Ganias*, 755 F.3d at 137-38.

Notwithstanding the warrant's limited scope, the agents who executed it "chose to

make mirror image" copies of every single file on Ganias's computers, including

not just the American Boiler and IPM data, but also vast quantities of other "files

beyond the scope of the warrant."  *Id.* at 128; *see* SA8-10.

Mr. Ganias was present throughout this mass data extraction. JA428. When Ganias expressed concern to Special Agent John Latham about the scope of the government's blanket seizure, Latham "assured" Ganias that any files unrelated to American Boiler or IPM "would be purged once the [government] completed [its] search" for relevant files. JA428.

After the data was seized, investigators from Army CID and the IRS spent the next thirteen months "isolat[ing] and extract[ing] the . . . IPM and American Boiler" data. 755 F.3d at 129. Once the responsive files were segregated, however, no one from the Army or the IRS did anything to purge or delete the non-responsive files *Id.* The agents working the case were well aware that the seized files included reams of data—among them Mr. Ganias's personal financial records—that were not "listed on" the warrant among the "items to be seized." JA348. But the agents nonetheless elected to retain those files indefinitely in their "evidence room." JA122, 145-46. As Special Agent Conner explained it, you just "never know what data you may need in the future." JA122.

Twenty-one months after the initial seizure, the government's indefinite retention of these non-responsive records started paying dividends. At that point, the IRS "expanded" its investigation "to include" a suspected underpayment by Mr. Ganias of his personal income taxes. SA17. The IRS sought Mr. Ganias's

-3-

consent to search the preserved images for evidence.  JA428.  When no consent

was forthcoming, the lead IRS agent on the case applied for a second warrant to

search the retained images of Ganias's personal financial records.  SA17.  On April

24, 2006, the magistrate judge signed the warrant.  *Ganias*, 755 F.3d at 130.

Mr. Ganias was subsequently indicted on two counts of tax evasion.  After

the District Court denied Ganias's motion to suppress his personal financial

records, *see* SA6-29, the jury convicted him on both counts.  755 F.3d at 130.

On appeal to this Court, Mr. Ganias argued that the seizure and indefinite

retention of his personal files violated the Fourth Amendment and warranted

suppression.  Opening Br. at 23-48.  In response, the government's answering brief

focused almost exclusively on the merits of the Fourth Amendment question.  In

the space of less than two pages—about 400 words out of 14,000—the government

also briefly argued that suppression was inappropriate because "the government

had acted reasonably at every turn."  Gov. Br. at 42-44, 66.  While the

government's exclusionary-rule analysis referred generally to the April 2006

warrant, the brief did not develop any argument that the second warrant  brought

this case within the good-faith exception of *United States v. Leon*, 468 U.S. 897

(1984).  *Compare* Gov. Br. at 42-44 *with* Petition at 7-10.  Nor did the

government's merits brief assert that the agents here conducted their seizure and

-4-

indefinite retention in reliance on governing "appellate precedent." *Compare* Gov. Br. at 42-44 *with* Petition at 10-13.

After fully considering the government's arguments, this Court reversed the denial of Ganias's suppression motion and remanded the case. The Court held that the government "clearly violated Ganias's Fourth Amendment rights" by retaining his personal files for two-and-a-half years until it "finally developed probable cause to search and seize them." 755 F.3d at 137-38. In its suppression discussion, the Court also concluded that neither the November 2003 warrant nor existing "precedent at the time" of the unlawful seizure provided any "good-faith basis to believe" the agents could "keep the nonresponsive files indefinitely." *Id.* at 140-41. The agents' later efforts to "obtain[] the 2006 search warrant," the Court noted, also could not "cure[]" or "excuse" use of these "wrongfully retained files." *Id.* at 138-39, citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). All told, the substantial "benefits of deterrence" outweighed the "minimal" costs of suppression. *Id.* at 140-41.

Judge Hall concurred in the Court's conclusion that indefinite retention of Ganias's "non-responsive documents . . . represent[ed] an unreasonable seizure," but dissented from the Court's exclusionary-rule holding. *Id.* at 141-42. The government now petitions for panel rehearing.

-5-

## ARGUMENT

**A.  The standards governing panel rehearing are narrow and require a showing that the Court has "overlooked or misapprehended" particular "point[s] of law or fact."**

By design, the standards governing panel rehearing under the Federal Rules of Appellate Procedure are narrow and extremely limited.  Fed. R. App. P. 40; *see Anderson v. Knox*, 300 F.2d 296, 297 (9th Cir. 1962) ("A properly drawn petition for rehearing serves a very limited purpose.") (adopting standard later codified in Rule 40).  A party seeking rehearing bears the burden of demonstrating that the Court's decision  "overlooked or misapprehended" particular "point[s] of law or fact."  Fed. R. App. P. 40(a)(2).  This Court does not consider new "argument[s] advanced for the first time on rehearing."  *Anderson v. Branen*, 27 F.3d 29, 30 (2d Cir. 1994); *see Easley v. Reuss*, 532 F.3d 592, 593 (7th Cir 2008) ("It goes without saying that the panel cannot have 'overlooked or misapprehended' an issue that was not presented to it.").  Nor is panel rehearing the time to "argue anew" issues that have already been raised, considered, and squarely decided by the Court.  *See Anderson*, 300 F.2d at 297.

Rather, the limited purpose of panel rehearing is to point the Court to "specific factual or legal matters that the party raised, but that the panel may have failed to address" or properly understand.  *See Eeasley*, 532 F.3d at 593-94.  So

-6-

long as the issues were "fully considered upon the parties' original submissions," mere disagreement with the Court's ultimate resolution of those issues provides no basis for panel rehearing. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 2004 U.S. App. LEXIS 19361, *6 (6th Cir. 2004); *see Gray v. Lucas*, 685 F.2d 139, 141 (5th Cir. 1982) ("[f]urther consideration unnecessary" where issues "raise[d] in [the] petition for panel rehearing were fully briefed by the parties and given plenary treatment" in the court's opinion).

**B.    The government cannot satisfy the standards for panel rehearing.**

The government's petition for panel rehearing fails to satisfy these standards.  The petition does not identify a single point of law or fact that the panel neglected to consider or failed to understand.  *See* Fed. R. App. P. 40(a)(2).  To the contrary, each of the points raised in the petition is either a new argument "advanced for the first time on rehearing," *see Anderson*, 27 F.3d at 30, or a rehash of an old argument that the panel fully considered—and squarely rejected—"upon the parties' original submissions." *Bridgeport*, 2004 U.S. App. LEXIS 19361, *6.

1.    *This Court did not overlook or forget about the good-faith exception to the exclusionary rule*.

The government first contends that this Court "overlooked the well-established" exception to the exclusionary rule for searches or seizures conducted

-7-

"in reasonable reliance on . . . warrants." *See* Petition at 7-10. The Court's opinion did no such thing. The panel majority in this case was obviously well aware of the good-faith exception first recognized in *United States v. Leon*, 468 U.S. 897 (1984), and the panel specifically cited *Leon* in its opinion. 755 F.3d at 137. The Court also provided an extended discussion of *Herring v. United States*, 55 U.S. 135 (2009), and *Davis v. United States*, 131 S. Ct. 2419 (2011)—both of which are part of the Supreme Court's "*Leon* line of cases," *id.* at 2427. *See Ganias*, 755 F.3d at 136-37, 140-41. Even more significantly, the Court's exclusionary-rule analysis specifically considered whether the "agents in this case" reasonably relied on the "2003 warrant" when they seized and indefinitely retained "Ganias's personal records." *Id.* at 140. The Court concluded—quite correctly under *Leon*—that the agents here did not reasonably rely on this 2003 warrant, because nothing in that warrant authorized blanket and indefinite retention of files outside the warrant's scope. *Id.* (panel "not persuaded" that the "2003 warrant" provided any "good faith-basis to believe the law permitted" retention of "nonresponsive files indefinitely"). Any suggestion that the panel was unaware of "*Leon*'s rule authorizing reliance on a warrant," *see* Petition at 8, is obviously incorrect.

Equally off the mark is the government's related claim that "the April 2006 search warrant" brought this case within the good-faith exception. *See* Petition at 8-10. Nowhere in its merits brief did the government argue that the good-faith exception applied based on the April 2006 warrant. Gov. Br. at 42-44; *see Anderson*, 27 F.3d at 30 (arguments raised "for the first time on rehearing" not considered). Nor would such a claim—even if timely raised—have any merit.

*Leon*'s good-faith exception applies in cases where law enforcement violates the Fourth Amendment while acting in "reasonable reliance" on a warrant. *Leon*, 468 U.S. at 900. Here, the agents clearly were not acting in reliance on the April 2006 warrant when they seized and indefinitely retained Ganias's personal files. To the contrary, by the time the April 2006 warrant issued, the agents' unconstitutional seizure of Ganias's files was long since complete. *See Ganias*, 755 F.3d at 137-38 (Fourth Amendment violation occurred upon indefinite retention of files seized outside 2003 warrant's scope). As this Court recognized in its opinion, to hold that the "2006 search warrant . . . cured" this prior unconstitutional seizure would "reduce[] the Fourth Amendment to a form of words." *Id*. at 138-39, quoting *Silverthorne Lumber Co. v. United States*, 251 U.S.

-9-

385, 392 (1920).  The April 2006 warrant thus provides no basis for applying the good-faith exception.[1]

2.    *The government's blanket seizure plainly was not in compliance with precedent.*

The government also claims that the agents' over-seizure and indefinite retention of Ganias's files "conform[ed] to precedent at the time" of their conduct. *See* Petition at 10, citing *Davis*, 131 S. Ct. at 2428.  This too provides no basis for panel rehearing.  Once again, the government's brief at the merits stage did not include any claim of good-faith reliance on governing precedent.  Gov. Br. at 42-45.  This itself is sufficient reason to reject the government's attempt to press the point "for the first time on rehearing."  *See Anderson*, 27 F.3d at 30.

Moreover, this very issue has already been "fully considered" by the panel in its decision on the merits.  *See Bridgeport Music*, 2004 U.S. App. LEXIS 19361, *6.  The Court's opinion squarely held that "the Government's handling of

---

[1] The government also claims, for the first time on rehearing, that Mr. Ganias's "trial counsel below conceded that the agents . . . acted" in good-faith reliance on the warrant.  Petition at 9-10.  Trial counsel's purported "concession" was unrelated to the issues in this appeal and concerned a different issue altogether—namely, whether the agents could reasonably rely on the warrant's "probable cause" findings.  JA425 (discussing reliance on warrant "*for probable cause purposes*.").   In any event, the government never so much as mentioned this purported concession in its merits brief, and it is far too late in the day to raise the point now.  *Anderson*, 27 F.3d at 30; *see United States v. Ortiz*, 621 F.3d 82, 86 (2d Cir. 2010) (party "waived her waiver argument by failing to assert it" timely).

-10-

Ganias's personal records violated precedent at the time of the search." 755 F.3d at 140. The government has provided no sound reason for revisiting that clear holding, and the decision was in any event entirely correct.

Fourth Amendment caselaw has long recognized that the type of conduct which occurred here—seizure and indefinite retention of files outside a warrant's scope—is unconstitutional and unreasonable. *Stanford*, 379 U.S. at 485-86; *Marron*, 275 U.S. at 196; *see United States v. Tamura*, 694 F.2d 591, 595-97 (9th Cir. 1982) (six-month "delay in returning" documents outside warrant's scope, after having "locat[ed] the relevant documents," was "an unreasonable and therefore unconstitutional manner of executing the warrant"); *United States v. Santarelli*, 778 F.2d 609, 615–16 (11th Cir. 1985) ("agents acted reasonably when they removed the documents to another location for subsequent examination, . . . . so long as any items found not to be relevant were promptly returned"). The Court properly applied that settled principle to the electronic files at issue in this case, and held that the government could not establish any good-faith reliance on precedent. There is no reason to revisit that conclusion in a petition for rehearing.[2]

---

[2] The government's petition claims that *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31 (D. Conn. 2002), "support[s] the agents' actions here." Petition at 10. But again, the government's merits brief never included any claim of good-faith reliance on *Triumph Capital*, and a petition for panel rehearing is not

-11-

3.     *The Court's assessment of the facts was proper and should not be disturbed.*

This Court's assessment of the factual record, *see* Petition at 12, was also

proper.  The panel opinion specifically acknowledged that it was "review[ing] the

district court's findings of fact for clear error," with all reasonable inferences

drawn in the government's favor.  755 F.3d at 131.  The panel's assessment of the

factual record was fully consistent with these standards.

At the time of the November 2003 warrant's execution, Special Agent John

Latham told Mr. Ganias that all non-responsive files "would be purged once the

[government] completed [its] search" for relevant files.  JA428.  In its rehearing

---

the time to be raising new arguments.  *See Anderson*, 27 F.3d at 30.  Moreover,
*Triumph Capital* addressed whether the government had engaged in the sort of
"extraordinary" and exceptional misconduct that would "justif[y] blanket
suppression" of all files, even those that were within a warrant's scope.  *Triumph
Capital*, 211 F.R.D. at 61.  Nothing in the opinion authorized or approved the
seizure and indefinite retention of computer files outside a warrant's scope.

The government also cites *United States v. Riley*, 906 F.2d 841 (2d Cir.
1990), for the proposition that the agents' decision to secure a second warrant in
April 2006 shows that they were engaged in nothing more than "conscientious
police work."  *See* Petition at 11.  There is a big difference, however, between the
conduct at issue in *Riley* and the conduct that occurred in this case.  In *Riley*,
agents executing a warrant immediately "applied to [a] magistrate for a [second]
warrant" after coming upon a "storage locker."  *Id*.  In this case, by contrast, the
agents seized and retained Ganias's personal files for *two-and-a-half years*—
without warrant or probable cause—on the chance that the records might someday
be useful in a future criminal investigation.  That was not conscientious police
work.  It was a blatant attempt to seize and indefinitely retain "one thing under a
warrant describing another."  *Stanford*, 379 U.S. at 485-86.

-12-

petition, the government disputes Mr. Ganias's account of his conversation with Special Agent Latham. *See* Petition at 12-13. But Mr. Ganias's account of the conversation is unrebutted and unchallenged on this record.

Had the government wished to rebut Ganias's testimony at the suppression hearing, it could have easily called Special Agent Latham to confirm or deny Ganias's story. The government also could have called the other "CID agent[] present" at Mr. Ganias's offices that day, "Special Agent James Rosenthal." JA74-75 (Agent Conner explaining that the two CID agents assigned to Ganias's office on the day of the warrant's execution were Latham and Rosenthal). The government, however, elected to call neither witness. There was nothing improper about the Court's consideration of testimony by Mr. Ganias that was never meaningfully disputed.[3]

---

[3] In its petition, the government notes that two computer technicians "testified at the suppression hearing that they had not heard" any agent make "representations to Ganias" about his "information being purged." Petition at 13. What the government neglects to tell this Court, however, is that both of these witnesses arrived at Mr. Ganias's business premises around "5:30 in the afternoon." *See* JA168 & 202. Special Agent Latham, on the other hand, arrived "around 8:00" in the morning. *See* JA202-03. It is hardly surprising that the government's witnesses did not overhear a conversation that took place hours before the witnesses even showed up.

Nor was there anything improper about the Court's acknowledgment that the Army's lead investigator in this case decided to treat Mr. Ganias's personal computer files as if they were the "*government's property*." JA146–147 (Agent Conner) (emphasis added). This testimony came directly from Special Agent Conner and was never disputed in the District Court. The governing standard of review mandates that the evidence be viewed in the "light most favorable" to the government. 755 F.3d at 131. It does not require that the Court "draw unreasonable inferences" or disregard undisputed facts. *Id.*; *see Caban-Hernandez v. Philip Morris USA, Inc*., 486 F.3d 1, 8 (1st Cir. 2007). The Court's consideration of the factual record in its opinion provides no basis for rehearing.

4.     *There is no need to "reweigh" the costs and benefits of suppression.*

Finally, the Court should also decline the government's invitation to "reweigh" the costs and benefits of suppression in this case. Petition at 13-15. Panel rehearing should not be used to re-litigate issues that were "fully briefed" and "given plenary treatment" in the Court's opinion. *See Gray*, 685 F.2d at 141. The Court should apply that rule and should decline to reconsider its decision.

And in any event, the panel's weighing of costs and benefits was entirely proper. The government criticizes the Court for considering "the *future* deterrent value" of suppression in this case, which the government views as "irrelevant to

-14-

the suppression analysis." Petition at 14, citing *Davis*, 131 S. Ct. at 2427. That is simply not so. The Supreme Court made clear in the very case the government relies on that the "[exclusionary] rule's sole purpose . . . is to deter *future* Fourth Amendment violations." *Davis*, 131 S. Ct. at 2426-27 (emphasis added). Consideration of "future deterrent value" is entirely appropriate.

The government also accuses the Court of "undervalu[ing] the costs of suppression" in a "tax evasion case" like this one, *see* Petition at 14, but the Court's assessment of the costs was correct. The panel readily acknowledged that Mr. Ganias's conviction for "tax evasion" was "a serious matter." 755 F.3d at 141. The Court then made the commonsense observation that the costs of suppression in a tax-evasion case (serious though they may be) are substantially less than the costs of suppression in a case where a violent and "dangerous defendant [may be] set free." 755 F.3d at 141; *see generally Nix v. Whiteside*, 467 U.S. 431, 447-48 (1984) (noting that the "exclusionary rule" might well be pressed "to the outer limits of its logic" if it were used to suppress the body of a murder victim). The Court's consideration of these variables in its cost-benefit analysis was reasonable and provides no basis for rehearing.

## **CONCLUSION**

The Court should deny the petition.

-15-

Respectfully submitted,

DEFENDANT-APPELLANT,
STAVROS M. GANIAS

Stanley A. Twardy, Jr.
Day Pitney LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
(203) 977 7300

Daniel E. Wenner
John W. Cerreta
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103
(860) 275-0100

Counsel for the Defendant-Appellant

-16-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    /s/ John W. Cerreta
    John W. Cerreta

-17-